**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KILROY WATKINS (20220427033),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22 C 7341** |
| **v.** | ) | |
| | ) | **Hon. Jeffrey I. Cummings** |
| **JACKLYON PHILLIPS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPNION AND ORDER</u>**

*Pro se* plaintiff Kilroy Watkins brings this action pursuant to 42 U.S.C. §1983 against two investigators from the Illinois Department of Children and Family Services ("DCFS"), Jacklyon Phillips and Sharon Richardson (collectively, the "State defendants"), the City of Chicago, and two Chicago Police Officers, Chanda Blackamore and Maykiae Ingram (collectively, the "City defendants"). Plaintiff's claims arise out of an incident on February 11, 2022, during which plaintiff alleges the State defendants came to the home he shares with his sister and her two minor children, accused him of being a sex offender, and expelled him from the house with the assistance of the City defendants.

The State defendants and the City defendants have filed separate motions to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(6), arguing, *inter alia*, that plaintiff has failed to properly state his claims. (Dckt. ##42, 61). Plaintiff filed responses to both motions, (Dckt. ##53, 66 (both oversized without leave)), and defendants filed replies, (Dckt. ##57, 67). For the reasons set forth below, the Court finds that plaintiff has failed to plead facts sufficient to show that defendants violated a clearly established constitutional right. Accordingly, the individual defendants are entitled to qualified immunity, and defendants'

1

motions to dismiss are granted. In light of this ruling, plaintiff's motion for leave to submit defendants' body camera footage, (Dckt. #71), is denied as moot.

## I.     LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II.    BACKGROUND

### A.    Factual Background[1]

On February 11, 2022, DCFS investigator Jacklyon Phillips—without a court order or consent—went to the "family home" where Watkins was staying with his sister (the homeowner), his two minor nieces, and his nineteen-year-old niece, and demanded that Watkins leave the house immediately.  (Dckt. #19 at 8; Dckt. #43-1 at 24).  Phillips' visit to the home was prompted by a call to the DCFS abuse hotline that Watkins, who at that time was indicated for sexual abuse from a 2021 incident (specifically for sexual penetration and sexual molestation), had access to minor girls living in the residence.  (Dckt. #43-1 at 4, 10).

When Watkins asked Phillips why he must leave the home, she informed Watkins that, "as a register[ed] sex offender, [Watkins] could not be around . . . his two minor age nieces." (*Id*. at 8–9).  Watkins then explained to Phillips that he was not a registered sex offender, but instead, was on the Illinois Violent Offender Against Youth ("VOAY") Registry, and that his sister (the mother of his nieces) was aware of this information.  (*Id*. at 9).

In an effort to resolve any conflict, Watkins called his attorney and asked Phillips to speak to his attorney.  (*Id*.).  Phillips refused to speak with plaintiff's attorney and continued to demand that Watkins leave the residence.  (*Id*.).  At this point, Watkins began recording Phillips with his cell phone.  (*Id*. at 10).  Phillips then screamed that she did not want to be recorded, fled to the front porch of the house, and called her DCFS supervisor, defendant Sharon Richardson. (*Id*.).  Richardson asked to speak to Watkins on the phone to advise him to stop recording

---

[1] The following facts are taken from plaintiff's second amended complaint, (Dckt. #19), the documents attached thereto, including certain DCFS investigation notes, and the DCFS investigation file attached to the State defendants' motion to dismiss, (Dckt. #43-1), because it is referred to in plaintiff's complaint and central to his claims.

Phillips. (*Id.*). In response, Watkins stated that it was not illegal to record a city or state worker in public, a statement with which Richardson disagreed. (*Id.*).

Watkins asked Richardson why Phillips was trying to remove him from the home without a court order, to which Richardson responded that no court order was needed and that Watkins must stop recording Phillips. (*Id.*). When Watkins continued to record, Richardson instructed Phillips to call the police. (*Id.*). Six police cars arrived, as well as Watkins' sister (who Watkins had called). (*Id.* at 10–11). Phillips informed the police officers that she did not want Watkins in the house because he was a registered sex offender, a fact which the officers did not investigate. (*Id.* at 11). Watkins' sister then informed the officers that she was aware of Watkins' VOAY registration and that she objected to him being removed from the house. (*Id.*). Phillips responded that, if Watkins did not leave the house, Phillips would take all minors in the house into state custody. (*Id.* at 11–12).

Watkins attempted to re-enter the house, at which time defendant officers Blackamore and Ingram prevented him from doing so. (*Id.* at 13). Officers Blackamore and Ingram told Watkins that he could re-enter to retrieve personal items (including a coat) only if he was accompanied by officers. (*Id.* at 12–13). Ultimately, the officers allowed Watkins to enter the home briefly on his own to retrieve his personal belongings, after which the officers instructed him to leave the home. (*Id.* at 13). The 2022 DCFS investigation which prompted the incident at issue in this case was later determined to be unfounded due to insufficient information. (Dckt. #43-1 at 57).

## B.     Procedural Background

On December 30, 2022, plaintiff—then (and now) an inmate at Cook County Jail—filed his initial complaint in this action, (Dckt. #1), which was subject to screening pursuant to 28

U.S.C. §1915A(a). *See Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Under 28 U.S.C. §1915A, the Court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones*, 549 U.S. at 214; *Turley*, 729 F.3d at 649.

The Court issued its first screening order on February 2, 2023. (Dckt. #4). In it, the Court held that plaintiff's original complaint, which named DCFS, six individual DCFS officials, and two Jane Doe CPD Officers, could not proceed because, *inter alia*, DCFS was not a proper defendant, and plaintiff appeared to bring at least two improperly joined claims in one action. Specifically, the Court found that plaintiff attempted to improperly join claims related to two unrelated incidents: (1) a claim alleging that several of the named DCFS officials and certain Chicago Police Officers unlawfully evicted plaintiff from his residence during the above-described February 11, 2022 incident; and (2) a separate claim that several DCFS officials deprived plaintiff of his constitutional rights in relation to separate DCFS investigations and administrative proceedings. (*Id*. at 2–3). The Court did, however, grant plaintiff leave to file an amended complaint in accordance with the screening order.

Plaintiff filed his first amended complaint on March 24, 2023, (Dckt. #9), which again was subject to screening under 28 U.S.C. §1915A. This time, plaintiff named the DCFS defendants (Phillips and Richardson), the City of Chicago, the Chicago Police Department, and two Jane Doe officers, and focused his allegations on the February 11, 2022 incident. Plaintiff's claims included illegal seizure in violation of his Fourth Amendment rights and violation of his due process rights to familial association under the Fourteenth Amendment. Plaintiff also

5

alleged that it was the policy and custom of the City of Chicago to inadequately and improperly investigate citizens' complaints of police misconduct.

The Court issued its second screening order on August 3, 2023.  (Dckt. #11).  This time, the Court held, among other things, that:

(1)     Plaintiff stated a plausible claim for the denial of due process as to defendants Phillips, Richardson and the two (since identified) police officers because defendants failed to conduct a proper investigation and proceeded hastily without verifying documentation indicating plaintiff was a sex offender;

(2)     Plaintiff plausibly alleged that defendants' improper findings prevented plaintiff from remaining in his family home with his sister and nieces, thus encroaching on his right to familial association without a court order;

(3)     Plaintiff failed to state a *Monell* claim against the Chicago Police Department or the City of Chicago because he offered no facts indicating that those defendants were acting (or failing to act) pursuant to a government policy;

(4)     Plaintiff failed to state a plausible claim that he was seized within the meaning of the Fourth Amendment based on his own allegations he was able to freely terminate any and all interaction with CPD officers.

(*Id*. at 3–5).

On October 11, 2023, plaintiff filed a second amended complaint ("SAC") against Phillips, Richardson, Officers Blackamore and Ingram, and the City of Chicago.  In his SAC, plaintiff asserted the following claims based on the February 11, 2022 incident: violation of his Fourth Amendment right not to be subjected to an unreasonable search and seizure against the City defendants (Count II); violation of his Fourteenth Amendment right to due process to familial association against the State and City defendants (Count III); failure to intervene against Officer Ingram for not preventing Officer Blackmore from violating Watkins' constitutional rights (Count IV); conspiracy to violate his constitutional rights against the State and City

6

defendants (Count V); a *Monell* claim against the City (Count VI); and an indemnification claim against the City (Count VII). (Dckt. #19).[2]

The Court screened the SAC and ordered that plaintiff may proceed against defendants Phillips, Richardson, Blackmore, Ingrim, and the City of Chicago with respect to Watkins' claims alleging Fourth and Fourteenth Amendment violations, conspiracy by the individual defendants to commit those violations, failure to intervene, and a state-law claim of indemnification against the City of Chicago. (Dckt. #30). All other defendants and claims, including the *Monell* claim, were dismissed. (*Id.*). Ultimately, the State and City defendants were properly served, appeared with counsel, and filed the motions to dismiss now before the Court.[3]

## III. ANALYSIS

Again, the State and City defendants now move to dismiss plaintiff's SAC, arguing, *inter alia*, that plaintiff has failed to properly state his claims, including facts sufficient to show that defendants violated a clearly established constitutional right. Plaintiff responds that the Court has already determined through its screening orders that his claims may proceed, and further that

---

[2] In Count I, Watkins asserted a general claim pursuant to 42 U.S.C. §1983 against defendants in their individual and official capacities. In the Court's view, this claim is subsumed by plaintiff's subsequent counts setting forth the specific purported violations of his constitutional rights.

[3] The Court notes that Watkins has two other cases pending in the Northern District of Illinois which appear to arise from similar facts as this one, though the claims are substantively distinct. *See Watkins v. Ramirez et al.*, No. 23-cv-2273 (Dckt. #5) (alleging that the investigation underlying Watkins' criminal cases was so flawed it violated his constitutional rights); *Watkins v. Baptiste et al.*, No. 22-cv-6377 (Dckt. #13) (alleging unlawful search and seizure and denial of right to counsel at the outset of his criminal case). The latter case is stayed under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) because of Watkins' ongoing criminal cases in Cook County: 22-CR-057601, 22-CR-0574801, and 22-CR-574901. In the former case, Judge Seeger ordered briefing from the plaintiff as to whether a stay is appropriate. In *this* Court's most recent screening order, the Court invited the parties to consider whether abstention under *Younger* is appropriate in this matter, but they have never raised the issue. (Dckt. #30 at 3 n.3).

he has properly stated his claims, which are not subject to dismissal on qualified immunity

grounds at this stage. For the following reasons, the Court respectfully disagrees.

A. **The Court's Prior Screening Orders Do Not Bar the Court from Examining the Issues Raised in Defendants' Motions to Dismiss.**

As a preliminary matter, the Court disagrees that the prior screening orders under 28

U.S.C. §1915A(a) preclude the Court from proceeding on the merits of defendants' motions to

dismiss. Indeed, "[c]ourts that have addressed the question of whether a complaint can be

dismissed after it survives §1915A screening have, almost invariably, answered yes." *Harris v.*

*Ruthenberg*, 62 F.Supp.3d 793, 800–01 (N.D.Ill. 2014) (collecting cases); *see also White v.*

*Ogbeide*, No. 22 C 2504, 2023 WL 6388303, at *1 (N.D.Ill. Sept. 29, 2023) ("The Court does

not find that its ruling under §1915A precludes its consideration of [defendant]'s motion to

dismiss under Rule 12(b)(6)."). This is not surprising given that under 28 U.S.C. §1915(e)(2), a

court may dismiss a case "at any time" if it determines the complaint fails to state a claim. "The

statute then does not freeze in amber an initial screening determination; nor should it given the

insular nature of that review, which is at odds with our adversarial system of justice." *Harris*, 62

F.Supp.3d at 801; *see also Abouhalima v. C.O. Lotz*, No. 2:21-CV-00029-JPH-MG, 2022 WL

22889714, at *1 (S.D.Ind. Aug. 22, 2022) (noting that "unlike a §1915A screening, a 12(b)(6)

motion to dismiss, like this one, allows for adversarial development of the issues.").

As such, the Court's screening orders are not dispositive of the sufficiency of plaintiff's

claims in the face of defendants' motions to dismiss, and the Court proceeds on the merits of the

motions beginning— and ending—with defendants' assertions of qualified immunity.

**B.**     **Plaintiff has Failed to State Claims for Violations of Clearly Established Rights.**

It is well settled that government officials like the City and State defendants here are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (cleaned up). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (cleaned up). "Courts may exercise their discretion when choosing which element to address first." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc).

"Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). As the Seventh Circuit recently articulated en banc, in addition to plausibly stating his claims under Rule 12(b)(6), a plaintiff such as Watkins suing "officers for monetary damages under §1983, faces an additional hurdle at the motion to dismiss stage" and must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Simply put, a plaintiff can plead himself out of court on qualified immunity grounds." *Sabo*, 128 F.4th at 843; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

"Examining whether defendants are entitled to qualified immunity upon a motion to dismiss also comports with the Supreme Court's directive to resolve immunity questions at the earliest possible stage in litigation, because qualified immunity protects government officials from both litigation and liability." *Sabo*, 128 F.4th at 842–43 (cleaned up); *Pearson*, 555 U.S. at 232; *Behrens v. Pelletier*, 516 U.S. 299, 305–06 (1996). As such, "dismissal of a plaintiff's complaint on qualified immunity grounds is appropriate if, taking the facts alleged in the light most favorable to the plaintiff, the defendant is entitled to qualified immunity as a matter of law." *Sabo*, 128 F.4th at 843.

### 1. Plaintiff has failed to plead facts to show he had any clearly established right at the time of defendants' alleged misconduct.

Within its discretion, the Court begins with the second prong in the qualified immunity analysis, *i.e.*, whether plaintiff has sufficiently pled that the constitutional rights at issue here were "clearly established" at the time of the defendants' alleged misconduct, such that defendants were on notice that their conduct would be clearly unlawful. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Tousis*, 84 F.4th at 698, (citing *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021)).

A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007). A plaintiff's burden in this regard is rigorous.

As the Seventh Circuit has explained:

> [A] right is clearly established for qualified immunity purposes if its contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. And in order to answer the question beyond debate, the Supreme Court has repeatedly emphasized that the clearly established law must share specific details with the facts of the case at hand. Though to defeat a defendant's assertion of qualified immunity plaintiffs need not produce a case directly on point, defining the applicable law at a high level of generality simply will not do. Only in the rare obvious case will the unlawfulness of the officer's conduct be sufficiently clear without existing precedent . . . addressing similar circumstances. This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (cleaned up).

For the reasons that follow, plaintiff has failed to establish that he had a clearly established right with respect to his claims under the Fourth and Fourteenth Amendments.

### a. Claim for Violation of Fourth Amendment Right Against Unreasonable Seizure (Count II)

In Count II, plaintiff claims that the City defendants violated his Fourth Amendment right to be free from an unreasonable seizure when they forced him to leave the house where he was residing with his sister. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[4] U.S. Const. amend. IV. A Fourth Amendment unreasonable seizure claim has two elements: (1) the defendant's conduct constituted a Fourth Amendment "seizure," and (2) the seizure was "unreasonable." *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002).

---

[4] To be clear, plaintiff does not claim that he was subject to an unreasonable search. Nor does plaintiff allege that defendants seized any of his personal property or otherwise barred him access to his personal property, which, by his own allegations, he was permitted to retrieve before being directed to leave the home.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020), *quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *accord United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) ("[T]he critical question relates to any possessory interest in the seized object, not to privacy or liberty interests."). "So the first issue—whether [Watkins] alleged that he suffered a 'seizure' within the meaning of the Fourth Amendment—turns on whether he alleged facts sufficient to support the inference that he had some possessory interest in [his sister's] home." *Dix*, 978 F.3d at 513. For the reasons that follow, Watkins has failed to do so.

First, Watkins has not alleged that he has *any* ownership interest in his sister's home nor has he sufficiently alleged that he was residing with his sister pursuant to a landlord-tenant relationship. Had he done so, he might have properly alleged a protected interest in the property. *See, e.g.*, *Thomas v. Cohen*, 304 F.3d 563, 573 (6th Cir. 2002) ("Forcible eviction of tenants . . . is by its very nature a meaningful interference with their possessory interests"). Here, however, Watkins alleges only generally that he had a possessory right to stay in his "family home" and he appears to ask the Court to simply infer his legal tenancy by relying on citations to authority supporting Fourth Amendment protections in the landlord-tenant context. (*See*, *e.g.*, Dckt. #66 at 10–11). But, as the Seventh Circuit has held, plaintiff's "naked allegation that he 'enjoyed the legal status and interest of a full-fledged tenant . . . is a self-generated legal conclusion to which this Court owes no deference'" on a motion to dismiss. *Dix*, 978 F.3d at 514, *quoting Snyder v. Daugherty*, 899 F.Supp.2d 391, 407 (W.D.Pa. 2012).

Moreover, the remainder of plaintiff's allegations and the record before the Court, including documents attached to his SAC and the DCFS investigation file, "actively undermine

[Watkins'] conclusory assertion that he was a tenant and therefore had a possessory right to [his sister's] home protected under the Fourth Amendment." *Dix*, 978 F.3d at 514; (*see* Dckt. #43-1 at 25 (Watkins explaining to DCFS that he "was told that he could *stay* in the home *with his sister and her minor children* because he was appealing the decision that was made in June of 2021"); Dckt. #19 at 53 (DCFS supervisory note documenting that both Watkins and his sister denied that he resided at the sister's home); *Id.* at 56 (DCFS supervisory note documenting Watkins' sister's statement that Watkins only used her address "for the purpose of parole")).[5]

At best, plaintiff's allegations support the conclusion that he had his sister's permission to remain within her house. As such, he merely had a *license* to remain in his sister's home, and not a lease—which "creates in the tenant a legal interest . . . in the premises and right to possession." *Dix*, 978 F.3d at 514 (cleaned up). Unlike with a lease (the ultimate hallmark of which is the "exclusive possession of the premises against all the world, including the owner"), a license "merely confers a privilege to occupy the premises under the owner" and is ordinarily revocable at the will of the grantor. *Millennium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 18 (Ill. 2010); *Application of Rosewell*, 387 N.E.2d 866, 870 (Ill. 1979) (a license does not "transfer[ ] a possessory interest"); *Dix*, 978 F.3d at 914 (noting that a "license is ordinarily revocable at the will of the grantor.") (cleaned up). Moreover, "a license cannot ripen into a prescriptive right, regardless of the time such permissive use is enjoyed." *Dix*, 978 F.3d at 915 (cleaned up). Consequently, plaintiff (as a license holder) did *not* have a possessory interest sufficient to support a Fourth Amendment claim. *Id.* at 514–16.

---

[5] The Court notes that it has the freedom to consider the facts within the documents that Watkins attached to his SAC even if those facts undermine his claims. *See, e.g., Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 659 & n.11 (7th Cir. 2024); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Furthermore, even if plaintiff had a possessory interest in his sister's home, as in the case of *White v. City of Markham,* rather than alleging he was "not free to leave," he has alleged that he was "not free to stay." 310 F.3d 989, 993 (7th Cir. 2002). As the *White* court commented, "under this factual scenario, when the plaintiffs were free to leave and thereby terminate the encounter at any time it is unclear whether a seizure occurred." 310 F.3d at 995. And, even if it did, defendants' undisputed conduct in directing plaintiff—who *at the time* had indicated sexual abuse charges—to leave a home where two minor children resided, was not unreasonable. *Tousis*, 84 F.4th at 698 (right at issue must be clearly established "*at the time of the officer's conduct*.") (emphasis added). It was well within the scope of the officers' "community caretaking function" to direct plaintiff to leave his sister's home out of concern for the safety of young children. *Lunini v. Grayeb*, 184 Fed.Appx. 559, 562 (7th Cir. 2006). It is of no moment that plaintiff refuted his registration status at the time or that the 2022 DCFS investigation was *later* determined to be unfounded because an officer's "decision [i]s not unreasonable even if it [i]s shown at a later time that the officer reached an incorrect conclusion." *Dix*, 978 F.3d at 517, *quoting Lunini*, 184 Fed.Appx. at 562.

Finally, plaintiff has failed to cite to either an analogous case establishing his clearly right to remain in his sister's home or to otherwise show that defendants' conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl*, 494 F.3d at 632. Indeed, the case plaintiff relies on is plainly distinguishable because the plaintiffs in that case *owned* the trailer home that was seized. (Dckt. #66 at 10–11 (citing *Sodal v. Cook Cnty., Ill.*, 506 U.S. 56, 57–58, 61 (1992)).

In sum: because plaintiff has failed to plead that defendants' conduct violated a clearly established right under the Fourth Amendment, plaintiff's claim for unreasonable seizure under

the Fourth Amendment (Count II) is dismissed. *See, e.g., Mitchell*, 472 U.S. at 526; *Sabo*, 128

F.4th at 842–43.

> **b.** **Claim for Violation of Fourteenth Amendment Right to Due Process (Count III)**

In Count III, plaintiff claims that the State and City defendants violated his Fourteenth

Amendment rights by depriving him of his familial relationships without due process when they

forced him to leave the home where he was staying with his sister and his two minor nieces. "A

person seeking relief under section 1983 for a violation of h[is] Fourteenth Amendment right to

substantive due process faces a difficult task." *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th

Cir. 2021). Indeed, "the scope of substantive due process is very limited," and courts are

"reluctant to expand the concept of substantive due process." *Campos v. Cook County*, 932 F.3d

972, 975 (7th Cir. 2019) (cleaned up); *see also Dobbs v. Jackson Women's Health Org.*, 597

U.S. 215, 231 (2022) (noting that the Due Process Clause "has been held to guarantee some

rights that are not mentioned in the Constitution, but any such right must be deeply rooted in this

Nation's history and tradition and implicit in the concept of ordered liberty.") (cleaned up and

internal quotations omitted). "[S]uch claims must meet a high standard," which "requires

allegations of conduct under color of state law that violated a fundamental right or liberty and

was so arbitrary and irrational as to shock the conscience." *Robbin v. City of Berwyn*, 108 F.4th

586, 589 (7th Cir. 2024) (cleaned up).

"The Supreme Court has held that the Fourteenth Amendment's Due Process Clause

shields certain aspects of the parent–child relationship from state interference." *Milchtein v.*

*Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (citing *Meyer v. Nebraska*, 262 U.S. 390,

399–400 (1923)). "This component of substantive due process—sometimes called the right to

'familial integrity,' or 'familial relations' includes a parent's interest in the 'care, custody, and

management' of his children." *Milchtein*, 42 F.4th 814 at 821 (cleaned up); *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."); *Croft v. Westmoreland County Children and Youth Services,* 103 F.3d 1123, 1125 (3d Cir.1997) ("We recognize the constitutionally protected liberty interests that parents have in the custody, care and management of their children."). It is this fundamental right to familial relations that Watkins contends applies to his claims.

Here, even accepting plaintiff's allegations as true and construing them in his favor, he has failed to sufficiently allege that he has a clearly established right—as an uncle—to remain in the residence with his minor nieces absent due process. First, plaintiff points to no analogous case—and the Court could not locate one—in which the Court extended the fundamental right to familial relations to an aunt/uncle and niece/nephew on facts similar to his case and, on the contrary, courts have expressed reluctance to do so. *See Montes v. Town of Silver City*, No. CV 03-1465 MCA/RHS, 2005 WL 8163433, at *7 (D.N.M. Nov. 4, 2005) ("It is also questionable whether a typical family relationship between an uncle and a nephew falls under the type of 'intimate association' that would be recognized as a constitutionally protected liberty interest"); *see also Rivera v. Mattingly*, No. 06 CIV. 7077 TPG, 2011 WL 4344422, at *10 (S.D.N.Y. Sept. 12, 2011) (declining to conclude that a grand-aunt and grand-uncle to minor children had fundamental right to substantive due process protections in light of the "Supreme Court's admonition that courts should proceed cautiously when entertaining claims that would broaden the scope of substantive due process protections.").

Moreover, the cases relied upon by plaintiff in support of extending the fundamental right to familial relations to the uncle/niece context are distinguishable as they plainly apply to long-

standing *custodial* relationships between extended family members and minor children. For example, in *Moore v. City of E. Cleveland, Ohio*, the Supreme Court held that a grandmother had a fundamental right to reside with a grandchild with whom she had established a long-standing custodial relationship. 431 U.S. 494, 504–06 (1977); *see also Ellis v. Hamilton*, 669 F.2d 510, 513 (7th Cir.1982) ("we are reluctant to conclude that a great-aunt, an adoptive grandmother, and a de facto mother and father all rolled up into one does not have a liberty interest sufficiently like that of a parent to support an action under section 1983"); *Rivera v. Marcus*, 696 F.2d 1016, 1022–25 (2d Cir. 1982) (holding that an aunt who shared a long-standing custodial relationship with her half-sister's children had a liberty interest in familial association with those children); *Osborne v. County of Riverside*, 385 F.Supp.2d 1048, 1054–55 (C.D.Cal. 2005) ("the court concludes that while close relatives, such as aunts, have no liberty interest in familial integrity or association with related children, such as nieces, 'by virtue of genetic link alone,' close relatives who have 'a long-standing custodial relationship' with related children such that together they constitute an 'existing family unit' possess a liberty interest in familial integrity and association."); *Cf. K.K. v. Berks County*, No. 5:15-cv-00475, 2016 WL 1274052, at *3–9 (E.D.Pa. Mar. 31, 2016) (distinguishing *Rivera* and holding that aunt and uncle did not have a clearly established constitutional right to retain custody of their niece and nephew who were their foster children).

As such, "[i]n the cases which have been decided since *Moore*, courts addressing the purported due process rights of grandparents and other extended family members seem to place particular emphasis on several factors," including "whether the plaintiff is a custodial figure or is otherwise acting *in loco parentis* to the children." *Rees v. Off. of Child. & Youth*, 473 Fed.Appx. 139, 142 (3d Cir. 2012); *see also Osborne*, 385 F.Supp.2d at 1053–55 ("It is this court's view

that the foregoing judicial authority supports the conclusion that the parental liberty interest in familial integrity and association with respect to their children extends to close relatives in *longstanding custodial relationships* with related children.") (emphasis added).  Here, however, plaintiff has not alleged that he has or has ever had a custodial relationship with his nieces (let alone, a *longstanding* custodial relationship) or that his sister is in any way incapable of caring for her own children.  To the contrary, documents attached to his SAC reflect the opposite.[6]

Again, having failed to point to an analogous case establishing his clearly established right, plaintiff must show that defendants' conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights."  *Steidl*, 494 F.3d at 632. Plaintiff has not attempted to do so nor likely could he where, as here, defendants directed plaintiff—who *at the time* defendants believed had indicated sexual abuse charges—to leave a home where two minor children resided.  *Tousis*, 84 F.4th at 698 (right at issue must be clearly established "*at the time of the officer's conduct*.") (emphasis added).

Because plaintiff has failed to plead facts showing defendants violated a clearly established right with respect to his familial relations with his nieces, plaintiff's due process claim under the Fourteenth Amendment (Count III) is dismissed.  *See, e.g.*, *Mitchell*, 472 U.S. at 526; *Sabo*, 128 F.4th at 842–43; *Van Dyke v. Illinois Dep't of Child. & Fam. Servs.*, No. 13 C 5971, 2014 WL 2134580, at *4 (N.D.Ill. May 22, 2014) ("Because [plaintiff] has failed to demonstrate that she possesses a liberty interest in her relationship with K.C., this claim is dismissed.").

---

[6] For example, in April 2022, Watkins' nineteen-year-old niece was interviewed by DCFS and reported that "her siblings are not left alone and [are] never alone in [Watkins'] care" and that when her mother goes to the office "[s]he is there with her siblings."  (Dckt. #19 at 47; *see also id.* ([Minor child] "reported they are not left home alone with [Watkins]").

### C.    Plaintiff's Remaining Claims Are Dismissed.

Finally, because the Court has dismissed plaintiff's claims for violations of his Fourth and Fourteenth Amendment rights, his remaining claims for conspiracy, failure to intervene, and indemnification—all of which are premised on an underlying constitutional violation—are also dismissed.  *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (holding that plaintiff's conspiracy and failure to intervene claims fell with his claims for Constitutional violations); *Adamidis v. Cook Cnty.*, No. 19 CV 07652, 2020 WL 2745979, at *1 (N.D.Ill. May 27, 2020) (noting that an indemnification claim "rises and falls with the claim against the other defendants.").  And, as defendants properly note, plaintiff's attempt to amend or add claims to his complaint through his response to the motions to dismiss is improper and any such claims are also dismissed.  *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (plaintiff cannot amend his complaint to state new claims in response to motion to dismiss).

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss, (Dckt. ##42, 61), are granted and this case is dismissed with prejudice.


**Date:  March 26, 2025**


**Jeffrey I. Cummings**
**United States District Court Judge**

19